## NAGEM ELECTRIC CO., Inc., v. AETNA INS. CO.

### No. 2083.

Court of Appeal of Louisiana. First Circuit.

April 10, 1940.

Kaufman & Anderson, of Lake Charles, for appellant.

McCoy & King, of Lake Charles, for appellee.

LeBLANC, Judge.

This is a suit instituted by the plaintiff to recover the sum of $339.25 on an insurance policy covering an automobile delivery truck which was damaged in a collision at 10 o'clock on the night of October 17, 1938, that being the same day on which the policy had been cancelled by the insurance company on order of the finance company which had held the notes given in payment of the truck.

The defense, which the district judge sustained, rested on the authority which the finance company claimed under its very terms, to cancel the policy. Judgment was accordingly rendered dismissing the suit and plaintiff has appealed.

The case was tried on the documents annexed to the pleadings and on an agreed statement of facts, both sides reserving the right to file written objections. Several objections were urged but only two, filed on behalf of defendant which were sustained below, form the basis of further controversy on the part of plaintiff. The first of these objections was to the introduction and filing in evidence of a blank form of fire insurance policy under the statutory New York Standard Form referred to in Act 105 of 1898 as amended by Act 255 of 1914, to show the conflict between the cancellation clause in that form of policy and the cancellation clause in the policy herein sued on. The objection was sustained on the ground that the issue regarding such conflict was not covered by the pleadings and the evidence tendered thereunder would have the effect of enlarging the pleadings and creating a new issue. The ruling apparently was correct but under our view of the case, as will be later developed, it is unnecessary for us to consider that issue.

The second of these objections, based on the same ground as the other, was to the offer of testimony on behalf of plaintiff that it had not been reimbursed by the finance company, the portion of the unearned premium due by the defendant insurance company. This was an objection which, in our opinion, was directed more to the weight and effect of the testimony than to its admissibility, and therefore should have been overruled.

With these preliminary matters disposed of we come now to a consideration of the merits of the case. These are the facts as revealed by the documentary evidence and the stipulation entered into between counsel:

On October 23, 1936, the plaintiff purchased from Holland-Shaddock, Inc., a Dodge delivery truck paying the purchase price partly in cash and giving its note payable in monthly installments of $24 covering a period of twenty-four months for the credit portion. The last installment was to mature October 23, 1938. The note which was secured by a chattel mortgage on the truck was discounted by Krause-Foster Company, Inc., heretofore and hereinafter referred to as the finance company. By the terms of the act of chattel mortgage plaintiff had to have the truck insured with acceptable insurance companies to the vendor or holder of the note with a loss payable clause in favor of the said holder as his interest might appear, and in the event of its failure to do so, the holder reserved the right to have said insurance affected and charge the same to the purchaser. In accordance with that provision of the act of chattel mortgage, the truck was insured for a period of two years ending October 23, 1938, by Krause-Foster Company, Inc., and the premium amounting to the sum of $58.15 was charged to the plaintiff and was paid from the proceeds of the note.

On October 21, 1936, the finance company had taken in its name what is referred to as an "open" or "master" policy of insurance with the defendant company and each car subsequently insured thereunder was covered by an individual certificate issued with reference to or in connection with the said open or master policy. The delivery truck which was the object of insurance in this case was covered by such a certificate in which the finance company was the named assured but by a provision therein contained, the insurance was extended to protect the purchaser of the truck as its interest might appear and a copy of the certificate, referred to as the "purchaser's copy," was issued. Under the cancellation clause, in the certificate, the insurance could be cancelled at any time at the request of the "named assured" for account of all parties at interest upon surrender of the certificate and crediting the said named assured with the excess of the paid premium above the customary short rate premium for the unexpired term and the refunding of such unearned premium. During the morning of October 17,

1938, six days before the last installment was due by it and six days also before the insurance on its truck expired, plaintiff paid the finance company in full and during the afternoon of the same day the finance company surrendered the certificate of insurance to the defendant company with request for cancellation. The certificate was cancelled in accordance with the request and the finance company was credited with the sum of 43 cents, that being the amount of the unearned premium as computed by defendant. At about 10 o'clock on the night of October 17, 1936 the truck was damaged by a collision to the extent of $389.25 but as the certificate contained a $50 deductible charge, the insurance company's liability, if any, would be limited to the sum of $339.25, the amount of plaintiff's demand herein.

We are of the opinion that under the set up regarding the insurance taken out on cars financed by Krause-Foster Company, Inc., the contractual relations were not restricted to that company and the insurance company. True it is that the open or master policy is issued to Krause-Foster Company, Inc., and that that company is the named assured, but the title of the endorsements made thereon indicates that its purpose is for insuring the interest of the retail purchasers of automobiles as well as those of the finance company. The very first stipulation, the one which designates the assured, whilst naming the finance company as such, included "also the retail purchasers named in the individual policies, certificates or memoranda of insurance issued in connection with the policy, hereinafter referred to as the purchaser." All references thereafter made to the purchaser make it clear that the intention is to protect the finance company only to the extent of the unpaid balance due on the purchase price of the automobile or truck itself which is the property of the purchaser. This, it would seem, is borne out by the fact that an individual certificate has to be issued in the name of each individual purchaser who shall be furnished with a copy thereof. Furthermore, the finance company is not charged with the premium but only guarantees its payment. As has already been stated, in this case the premium was paid by the plaintiff and whilst the unearned portion amounting to 43 cents was credited by the defendant to the finance company, there is no question that it was a credit belonging to the plaintiff and was so acknowledged by the finance company without making it known to the plaintiff, when, somewhat arbitrarily, it seems to us, the finance company offset the amount with a charge said to be for interest on deferred payments. It strikes us that if the plaintiff owed such interest, the charge should have been called to its attention on October 17, 1938, when it paid the last installment on its note, six days before it was due.

The individual certificate issued in connection with the open policy although designating the finance company as the named assured, specifically provides that "the insurance granted * * * by this certificate is extended to protect the purchaser of the following described motor vehicle which is named below as his interest may appear." The plaintiff is then named as the said purchaser and the motor vehicle described is the Dodge Commercial truck purchased and owned by it.

All the disclosures made and the stipulations contained in the open policy as well as those of the certificate convince us that the contractual relations arising therefrom were never to be limited to the finance company and the defendant insurance company but included the interest of the plaintiff as well, and the important question which confronts us is whether under the cancellation clause of the certificate the finance company and the insurance company were authorized to act to the exclusion of the plaintiff.

The cancellation clause in the certificate provides that the insurance "may be cancelled at any time at the request of the named assured for account of all parties at interest, * * *" and upon that broad provision the defendant relies for authority of the finance company to have had the cancellation effected as it did in this case.

Inasmuch as we have concluded that plaintiff was a party to the contract of insurance the same as was the finance company, in order for cancellation of the policy by the finance company for account of plaintiff to have been effective as to the latter, it would have been necessary for it to have delegated the right to cancel to the finance company by some form of authorization; some act creating a form of agency expressly empowering it to do so. Plaintiff had some sort of vested right in the insurance covering its truck. It was the owner of the property insured and had

paid the insurance premium. It was in a sense, a right of ownership, subject only to the interest of the finance company as holder of the note, and only by express grant could the finance company have exercised any authority abrogating any of its such rights. Civil Code, Article 2996. Looking to the record for the grant of such power, what do we find? Merely the authority given by the plaintiff in the act of chattel mortgage to the holder of the chattel mortgage note, to insure the truck in the event of its failure to do so, "with acceptable insurance companies" to an amount not less than the sum of the note. The grant of that authority created merely a general mandate to insure the truck in an acceptable insurance company, that is a reputable and financially responsible insurance company, with a loss payable clause in favor of the holder of the note as its interest might appear, but it cannot be held to constitute a power or authority to insert in the insurance policy a cancellation clause which would destroy the rights of the purchaser and owner of the truck insured after those of the holder of the note would have been served. Such power, in our opinion, was not contemplated and certainly if intended would have had to be given by express grant.

The precise question here at issue has never been presented to any of our courts, as far as we have been able to ascertain, but we find that in the case of West v. Importers and Exporters Insurance Company, 8 La.App. 98, this court committed itself to the proposition that in the absence of express authority to bind him to an arbitration agreement, the owner of an insured automobile was not bound by a clause in an insurance policy procured by a finance company requiring him to appoint appraisers or arbitrators in the event of loss or damage. In principle we believe that the decision can apply as authority in this case.

The point is urged by defendant that the plaintiff who was furnished a copy of the certificate of insurance is charged with knowledge of its contents and is estopped from contesting the validity of the cancellation clause. Aside from the doubt there seems to be whether plaintiff ever was in possession of the purchaser's copy of the certificate, under the view we have taken in the case it would be immaterial since we have concluded that it was not bound by the stipulation therein regarding its cancellation by the finance company.

The views we entertain naturally lead to a reversal of the judgment appealed from and it is for the reasons stated now ordered that the judgment of the district court be and the same is hereby set aside, avoided and reversed and that there now be judgment in favor of the plaintiff, Nagem Electric Company, Inc., and against the, defendant Ætna Insurance Company, in the full sum of $339.25 with 5% interest from date of judicial demand, and all costs of this proceeding.